UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOTICOL CHASTANG, | No. 2:15-cv-0961 DB P |
| Plaintiff, | |
| v. | ORDER |
| E. CERVANTES, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1). (ECF Nos. 4, 23.) Plaintiff alleges excessive force by defendants in violation of the Eighth Amendment. Before the court is defendants' motion for summary judgment (ECF No. 36.), plaintiff's opposition (ECF No. 42), and defendants' reply (ECF No. 45). For the reasons set forth below the court will grant the motion for summary judgment.

////
////
////
////
////
////

1

# BACKGROUND

## I. Allegations in the Complaint

In his complaint, plaintiff alleges the following. (ECF No. 1.) On November 30, 2014 he was involved in a fist fight on the prison yard. Defendants Cervantes and Ellis deliberately shot him five times with their 40 millimeter ("40mm") launchers[1]. Plaintiff claimed he was maliciously shot in the head by one of the defendants. Further, he stated while he was unconscious from the shot to the head, one of the defendants took aim and shot him in the right elbow.

## II. Procedural

Plaintiff filed the complaint in April 2015. (ECF No. 1.) The court screened the complaint and found plaintiff stated a cognizable Eighth Amendment claim against defendants Cervantes and Ellis. (ECF No. 11.) Defendants answered and following the close of discovery filed the instant motion for summary judgment. (ECF Nos. 20, 36.) Plaintiff filed an opposition (ECF No. 42), defendants replied (ECF No. 45), and plaintiff filed an unauthorized sur-reply (ECF No. 46). Although the plaintiff does not have the right to file a sur-reply under the Federal Rules of Civil Procedure or the Local Rules, and did not seek leave of court to file one, the court will consider it given plaintiff's pro se status and the absence of any objection by defendants.

# SUMMARY JUDGMENT

Defendants argue they are entitled to summary judgment because they used reasonable and necessary force to stop the fight and they are entitled to qualified immunity. Plaintiff argues defendants' actions were malicious and sadistic in violation of the Eighth Amendment because officers on the yard could have broken up the fight with chemical agents, and thus defendants' use of their 40mm launchers was gratuitous.

////

---

[1] A 40mm launcher is a less-lethal weapon used to fire "a round that is made of dense foam or rubber," Campbell v. Santa Cruz County, No. 14-cv-0847 EJD, 2016 WL 6822081, at *5 (N.D. Cal. Nov. 18, 2016), and is "the equivalent of a baton strike," Foley v. Kernan, No. 16-cv-0408 JLS BGS, 2017 WL 3840343 at *4 (S.D. Cal. Sept. 1, 2017). See also Cal. Code Regs. tit. 15, § 3268(c)(4).

# I. Legal Standards

## A. Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. at 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate
////

inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

**B. Excessive Force under the Eighth Amendment**

The Eighth Amendment prohibits cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment prohibited by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (citations and quotations omitted). The use of force is constitutional if used to keep or restore order in the prison; it is unconstitutional if used maliciously or sadistically for the very purpose of causing harm. Id. at 320-21 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 501 U.S. 1, 9 (1992). The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id., at 9-10.

The Supreme Court has identified five factors to consider in determining whether an official's use of force was for the purpose of maintaining and restoring discipline, or for the malicious and sadistic purpose of causing harm: (1) extent of the injury; (2) need to use the force; (3) relationship between the need to use the force and the amount used; (4) the threat "reasonably perceived" by the official; and (5) any efforts made to temper the severity of the force. Id. at 7; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to the need in each situation). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Among unnecessary and wanton inflictions of pain are those that are totally without penological justification, Hope v. Pelzer, 536 U.S. 730, 737 (2002) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (quotation marks omitted), and punitive treatment which amounts to gratuitous infliction of wanton and unnecessary pain is prohibited by the Eighth Amendment, Id. at 738 (quotation marks omitted). Furthermore, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their

////

5

judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson, 503 U.S. at 6 (ellipsis in original) (citation omitted).

## II. Material Facts

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 36-2.) Plaintiff's filing in opposition to defendants' motion for summary judgment fails to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

While "[p]ro se litigants must follow the same rules of procedure that govern other litigants," King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc), it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curium). The unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with applicable rules. However, only those assertions in the opposition which have evidentiary support in the record will be considered. Plaintiff filed a brief, a statement of undisputed facts, and approximately 100 pages of exhibits

largely comprised of incident reports submitted by defendants and officers on the yard during the incident. In light of plaintiff's pro se status the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendant's DSUF.

### A. Undisputed Facts

On November 30, 2012, while incarcerated at California State Prison-Sacramento, plaintiff was released onto the yard and initiated a physical altercation with fellow inmate Yacub McClendon. (DSUF (ECF No. 36-2 at 1-2) ¶¶ 1, 3.) Defendants Ellis and Cervantes were stationed in the watch tower supervising approximately 200 inmates on the yard. (Id. at ¶ 2, 6.) From the tower, Ellis and Cervantes observed plaintiff and McClendon fighting on the yard. (Id. at ¶ 4.) Over the public address system Ellis ordered all the inmates on the yard to get down. (Id. at ¶ 7.) All of the inmates on the yard complied with the order, except plaintiff and McClendon, who continued fighting. (Id. at ¶¶ 6, 7.) Plaintiff heard the order and continued fighting. (Id. at ¶¶ 7, 9.) During the course of the fight, plaintiff and McClendon fell to the ground, where they rolled around and continued fighting. (Id. at ¶ 9.)

Cervantes stated in his report, he aimed his 40mm launcher at the lower leg of one of the fighting inmates when plaintiff and McClendon failed to comply with verbal orders to get down. (Plaintiff's Opposition ("Pl's Opp.") (ECF No. 42) at 20.) He fired, but missed. (Id.) Cervantes gave a verbal order for plaintiff and McClendon to stop fighting, and fired a second shot, striking one of the inmates in the leg. (Id.) When the inmates continued fighting, Cervantes reloaded and ordered the inmates to get down. (Id.) He stated he again aimed at the inmates' lower leg area and struck one of them in the left buttocks. (Id.) While he was reloading he heard the detonation of several oleoresin capsicum ("OC") grenades. (Id.)

Ellis issued a verbal order for the plaintiff and McClendon to stop fighting. (Id. at 26.) It was ignored and he fired his 40mm launcher, Ellis stated in his report that he aimed at and struck one of the inmates in the thigh. (Id.) Ellis reassessed, reloaded his launcher, and issued another verbal order for the inmates to get down. (Id. at 27.) They continued fighting on the ground. (Id.) Ellis fired a second round. (Id.) He stated in his report that he was aiming at the thigh, but "[d]ue to the rapid and constant movements of the two inmates fighting, the 40mm round

7

appeared to strike one of the combatants in the neck area." (Id.) Ellis' report notes the inmates were still fighting following his second shot. (Id.) Ellis reloaded his launcher and observed officers on the yard detonate OC grenades. (Id.) The inmates separated, plaintiff remained on his hands and knees, and McClendon stood up. (Id.) Ellis yelled at the inmates to get down. (Id.) McClendon advanced toward plaintiff and Ellis fired one more round striking McClendon in the right thigh. (Id.) McClendon subsequently got down and officers were able to gain control of the situation. (Id.)

While defendants were shooting from the tower, officers on the yard issued verbal orders for plaintiff and McClendon to stop fighting. Yard officers also detonated three OC grenades. (Id. at 16-18, 26-27, 32-33, 42-48.)

### B. Disputed Facts

Plaintiff's statement of undisputed facts differs from defendants in a few respects. (Plaintiff's Statement of Undisputed Facts (ECF No. 42 at 11-13).) Plaintiff claims defendants refused to allow officers on the yard to stop the fight with OC grenades by shooting their 40mm launchers from the tower. He disputes defendants' claims that they aimed only at the lower half of his body. He further claims defendants were aware he was unconscious and purposely shot at him.

### III. Analysis

In order for an Eighth Amendment excessive force case to go to trial, the evidence must go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" to support "a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322. "The core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (internal quotations omitted). The court will address each of plaintiff's arguments in turn.

////

////

### A. Defendants Should Have Allowed Yard Officers to Use OC Grenades

Plaintiff argues defendants should have refrained from using their 40mm launchers and allowed officers on the yard to stop the fight using OC grenades. Plaintiff's argument is undercut by incident reports from officers on the yard, presented by plaintiff in support of his opposition, stating yard officers detonated two OC grenades with no effect. (Pl's Oppo. (ECF No. 42) at 16-18, 26-27, 32-33, 42-48.) Correctional officers are not required to concede to the demands of inmates or wait them out in order to avoid the use of force. Soto v. Dickey, 744 F.2d 1260, 1267 (9th Cir. 1984) ("experience and common sense establish that a prison cannot be operated in such a way."). Further, prison officials are entitled to "'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Whitley, 475 U.S. at 322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

Plaintiff also argues yard officers were unable to break up the fight using OC grenades because defendants were firing 40mm launcher rounds from the tower. There is nothing in the reports from officers on the yard to show that defendants' use of their 40 mm launchers prevented them from using OC grenades to break up the fight. (Pl's Oppo. (ECF No. 42) at 16-18, 26-27, 32-33, 42-48.)

Plaintiff argues officers should have refrained from using the 40 mm launchers because neither he nor McClendon were armed. Plaintiff has not put forth any evidence showing officers were prohibited from using their 40mm launchers to stop a fight between two unarmed inmates. Additionally, there is no case law demonstrating that the use of 40 mm launchers in breaking up a fight is per se excessive. Further, even if it were shown officers violated prison policy by using their 40mm launchers, this alone would not be enough to incur liability under the Eighth Amendment. See Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (alleged failure to follow prison policy does not establish federal constitutional violation).

Plaintiff has offered only his opinion that officers should have used different means to break up the fight. He has acknowledged officers were entitled to use force in order to stop the fight, however, he objects to the method of force used by defendants. In order for an Eighth

Amendment excessive force case to survive summary judgment, the evidence must go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" to support "a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322.

### B. Cervantes Retaliated Against Plaintiff

Plaintiff argues officer Cervantes knew plaintiff was one of the inmates fighting and purposely shot at him. Plaintiff includes a report authored by Cervantes detailing an incident that occurred in June 2014 in which Cervantes was one of several officers restraining plaintiff as he resisted officers. (Pl's Opp. (ECF No. 42) at 119-23.) However, plaintiff stated in his deposition that he had no prior involvement with either Cervantes or Ellis prior to November 30, 2014. (Declaration of Esquivel (ECF No. 36-5) at 50; (Pl's Deposition ("Dep.") at 28.) Plaintiff states Cervantes knew who he was because of the June 2014 incident. (ECF No. 46 at 2.)

Defendants maintain they were unable to identify the fighting inmates from their post in the tower 75-feet away. Incident reports from officers on the yard also support defendants' assertion that plaintiff and McClendon were only identified after the fight ended. (Declaration of Cervantes ("Decl. Cervantes") (ECF No. 36-3) at ¶ 3; Declaration of Ellis ("Decl. Ellis") (ECF No. 36-4) at ¶ 3; Pl's Oppo. (ECF No. 42) at 16-18, 26-27, 32-33, 42-48.) The Ninth Circuit has held that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) ("'[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" (citation and quotation omitted).)

There is nothing in the record, that indicates Cervantes identified plaintiff as one of the inmates fighting from his position in the tower and purposely shot at him because of the June 2014 incident. Plaintiff has failed to create a triable issue of fact regarding Cervantes' use of his 40mm launcher to stop the fight.

////

### C. Plaintiff Complied With Orders to "Get Down"

Plaintiff argues defendants used excessive force by shooting him while he was on the ground. However, plaintiff admitted he continued fighting after he fell to the ground and that he continued fighting even after feeling the impact of the 40mm launcher rounds. (Dep. at 31-39.) An order to get down is understood by inmates as an order to lie on the ground with their hands at their sides. (Decl. Ellis (ECF No. 36-4, ¶ 8); Decl. Cervantes (ECF No. 36-3 at ¶ 8).) Plaintiff's arguments that officers acted maliciously by shooting him while he was down are not sufficient to support an inference that defendants used excessive force because he conceded he was still fighting while he was on the ground requiring officers to use force to break up the fight.

### D. Officers Continued Firing After he Lost Consciousness

Plaintiff claims defendants acted maliciously and sadistically because they fired their 40mm launchers at him while he was unconscious following a 40mm round striking him in the head. Even taking as true plaintiff's allegation that he lost consciousness following the shot to his head, there is nothing in the record to indicate either officer was aware plaintiff lost consciousness[2]. See Nelson v. Pima Cmty. College, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). There is nothing in any of the non-defendant officers' reports or video footage of the incident to support plaintiff's allegation that defendants fired at him purposely while he was visibly unconscious. (Pl's Oppo. (ECF No. 42) at 16-18, 26-27, 32-33, 42-48; ECF No. 40.)

////
////
////
////
////

---

[2] While there is a reference in one of the responding officer's incident reports (Pl's Oppo. (ECF No. 42) at 46) that it appeared Plaintiff was giving McClendon a bear hug; however, this is insufficient to show the officers from the tower were aware plaintiff lost consciousness and continued firing.

11

# CONCLUSION

For these reasons, the evidence is insufficient for a reasonable juror to conclude that defendants used force maliciously and sadistically to harm plaintiff. Accordingly, summary judgment should be granted in their favor.[3]

Accordingly, IT IS HEREBY ORDERED THAT defendants' motion for summary judgment (ECF No. 36) is granted.

Dated: January 8, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB12
DLB1/Orders/prisoner-civil rights/chas0961.msj

---

[3] Because defendants did not violate plaintiff's Eighth Amendment rights, the court need not address the question of qualified immunity. Pearson v. Callahan, 555 U.S. 223, 236 (2009).